IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| JESSICA YOUNG )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>UNITED PARCEL SERVICE )<br>OF AMERICA, INC. )<br>)<br>Defendant. ) | Case No.<br><br>REQUEST FOR JURY TRIAL |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Jessica Young ("Plaintiff") and for her Complaint for Damages against Defendant United Parcel Service of America, Inc. ("Defendant"), and alleges and states as follows:

**Parties and Jurisdiction**

1. Plaintiff is a citizen of the United States, residing in Johnson County, Kansas.

2. Plaintiff is and was, at all times relevant to this Complaint, an employee of Defendant at Defendant's facility in Lenexa, Kansas within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(f) et seq. ("Title VII").

3. Defendant is an international company with its Headquarters in Atlanta, Georgia, United States of America.

4. At all times pertinent to this Complaint for Damages, Defendant was an employer within the meaning of Title VII.

5. Defendant continuously operates a facility where Plaintiff is employed at 14650 Santa Fe Trail Drive, Lenexa, Johnson County, Kansas.

6. All counts in this Complaint are brought under Title VII, a federal statute.

1

7. Some, if not all, of the alleged unlawful practices took place in the State of Kansas, within the territory of the District of Kansas.

8. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1391.

## Administrative Procedure and Procedural Posture

9. On or about August 31, 2021, Plaintiff timely filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation as the bases for her claims.

10. On or about July 25, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue. A copy of the Notice of Right to Sue is attached as Exhibit A and incorporated by reference herein.

11. This suit is filed within 90 days of the issuance of the Notice of Right to Sue.

12. Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations Common to All Counts

13. Plaintiff is an employee of Defendant.

14. Plaintiff is employed by Defendant as a small package dispatcher.

15. Plaintiff has held this position since in or about June 2018.

16. Plaintiff is a transgender woman.

17. Plaintiff is a member of the protected class of "sex."

18. Plaintiff informed Defendant that she was transgender and transitioning to female to the Human Resources Department on or about May 19, 2020.

19. Plaintiff was subjected to disparate treatment by her coworkers and supervisors and passed over for multiple promotions because of her sex.

20. Plaintiff has also been subjected to retaliation by her coworkers and supervisors for making complaints of discrimination to Human Resources.

21. Plaintiff's supervisors condoned and participated in the discrimination and retaliation against Plaintiff in addition to the discrimination by Plaintiff's coworkers.

22. Prior to Plaintiff informing Defendant of her transition to female, Plaintiff was being groomed for a promotion within the package dispatch department at Defendant's Lenexa, Kansas facility.

23. The promotion position for which Plaintiff was being groomed was Package Dispatch Supervisor.

24. In or about December 2019, Plaintiff met Darcy Scott ("Scott") in a meeting.

25. Scott was so impressed with Plaintiff, she raved about Plaintiff to Plaintiff's brother, who was a supervisor in another UPS facility.

26. Scott told Plaintiff's brother that Plaintiff had a bright future with Defendant company.

27. Plaintiff subsequently worked within the Package Dispatch Supervisor position from in or about July 2020 to November 2020 even though she did not receive the actual promotion or any additional financial benefits from working as a Package Dispatch Supervisor.

28. When Plaintiff began working in the capacity of a Package Dispatch Supervisor, her transition to female was not yet known to her coworkers and many of her superiors.

29. On or about May 19, 2020, Plaintiff contacted John Shores ("Shores") in the Human Resources Department.

30. During this conversation with Shores, Plaintiff informed Shores that she is transgender and was moving forward with transition from male to female.

31. Shores immediately responded, "Well, what do you want me to do about it?"

32. Shores immediate response clearly indicated to Plaintiff that Shores was unwilling to take any action to assist Plaintiff with informing Defendant company and take any action to insure a smooth workplace transition for Plaintiff.

33. Plaintiff then informed Shores that her preferred name is Jessica and requested Shores change her name in the company system to reflect her new name.

34. Shores refused to make any changes.

35. Plaintiff then directed Shores attention to Defendant's anti-discrimination policies and explained that his refusal to assist Plaintiff and refusal to make the requested changes to her employee information violated Defendant's anti-discrimination policy.

36. Shores persisted in his refusal to assist Plaintiff in any way and persisted in his refusal to change her employment records to reflect her new name.

37. Plaintiff had to repeatedly make her request to Shores for assistance with communicating her transition to her coworkers and superiors and to get her name changed in the company system.

38. Shores waited until nearly a month before he reluctantly made the change of Plaintiff's name within Defendant company's system in June 2020.

39. Near this same time Shores finally communicated Plaintiff's transition and name change to 4 to 5 members of the facility's inner management circle and left it to these individual division managers to disseminate the information further.

40. One of these persons to whom Shores communicated Plaintiff's transition to female was Dennis Davis, Jr. ("Davis"), the division manager over Plaintiff.

41. Upon information and belief, Shores took no further action.

42. Defendant failed to properly disseminate and instruct its personnel in the proper treatment of Plaintiff following the announcement of her transition to female.

43. In or about the first week of August 2020, Plaintiff had a meeting with her new work group.

44. During the meeting, Gayle Ferguson ("Ferguson"), the manager of the new work group, introduced Plaintiff to her coworkers using Plaintiff's old name of "Colton."

45. By the time of this meeting, Davis, Plaintiff's division manager, had already been tasked with informing Plaintiff's coworkers about her transition and her new name at least a month prior to this meeting, but did not do so.

46. Upon information and belief, Davis intentionally did not inform Plaintiff's coworkers about Plaintiff's changes or instruct them to address Plaintiff appropriately according to her gender identity.

47. Davis's actions and/or inactions violated Defendant's policies related to transgender employees.

48. Defendant's actions and/or inactions caused Plaintiff unnecessary embarrassment, humiliation, and distress.

49. In or about the first week of September 2020, Plaintiff had another meeting with her work group in which Supervisor Steve Ruley ("Ruley") started the meeting by stating, "Hey ladies and gents," then pointed to a non-transgender woman and a non-transgender man and further said, "And you all are the ladies."

50. Plaintiff was offended by Ruley's comment.

51. Ruley, and everyone else in Plaintiff's work group, knew of Plaintiff's transition to female by this time.

52. Ruley's comment pointedly excluded Plaintiff from identification as a lady.

53. Upon information and belief, Ruley's joke was intended to be offensive to and to single out Plaintiff because of her sex, because of her transition to female, and because Plaintiff is a transgender woman.

54. During this time frame, Plaintiff was continuing to work in the capacity of a Package Dispatch Supervisor, albeit without the pay and benefits commensurate with the position.

55. On or about September 1, 2020, Plaintiff interviewed for the Package Dispatch Supervisor position with Scott.

56. During the interview, Scott informed Plaintiff that, "We know you can do the job, so we are not going to talk about the job."

57. Right after Plaintiff was interviewed, Defendant reposted the job both internally to all UPS facilities and on Indeed.com.

58. The reposting of the job violated Defendant's own policy of always promoting from within the same facility and never posting managerial positions on outside sources such as Indeed.com unless there are no internal candidates.

59. On or about October 12, 2020, Plaintiff was informed that a gentleman named Solomon Wilson ("Wilson"), who was from another facility, had been hired for the Package Dispatch Supervisor position.

60. When Plaintiff inquired about why Wilson had been hired over her, Hamilton Terrell ("Terrell"), Plaintiff's direct supervisor, told her that she lacked enough dispatch experience for the job.

61. Plaintiff was immediately suspicious of this explanation as she had been working in dispatch for the previous two and a half years and was already successfully filling the role of Package Dispatch Supervisor for several months.

62. Plaintiff was also aware that Wilson had no dispatch experience prior to his being hired for the Package Dispatch Supervisor position.

63. After Wilson began work as the Package Dispatch Supervisor in or about November 2020, Plaintiff began to receive calls outside of work hours form many managers, and especially from Ferguson, instructing her to call Wilson and teach Wilson how to do the Package Dispatch Supervisor's job.

64. Plaintiff received four such calls from Ferguson in January 2021, over two months after Wilson had been working in the Package Dispatch Supervisor position.

65. Defendant required Plaintiff to continue teaching Wilson how to do the job for the next several months despite having previously told Plaintiff she lacked the requisite experience to perform the job now held by Wilson.

66. On or near the end of October 2020, Plaintiff filed an internal complaint requesting an investigation into the discrimination she was suffering at the hands of her coworkers and superiors.

67. Per Defendant's policy, the investigation was to be completed within 30 days of Plaintiff raising the complaint.

68. The investigation was not completed until February 2021, more than three months after Plaintiff made her complaint.

69. Jim Reis ("Reis") had been tasked with completing the investigation.

70. Reis concluded that there was no discrimination against Plaintiff in denying her promotion, and upon information and belief, did not address any of the other issues of discrimination facing Plaintiff.

71. Upon information and belief, Defendant's "investigation" into Plaintiff's complaint were intentionally delayed by Davis's interference into the investigation and the performance of the investigation was merely cursory, and not genuine.

72. Upon information and belief, Davis, who was Plaintiff's division manager, was the decision maker responsible for denying Plaintiff the promotion to Package Dispatch Supervisor.

73. After the conclusion of the investigation, Plaintiff was informed that Davis had been interviewed for the investigation into Plaintiff's complaint and responded that Plaintiff had been denied the promotion because she did not have a college degree.

74. Davis's reasoning that a lack of degree was the reason Plaintiff was denied the promotion was clearly inconsistent with the earlier stated reason that Plaintiff lacked the requisite experience in dispatch to be promoted.

75. After Davis promoted Wilson over Plaintiff, Davis has made multiple other hires of non-transgender persons without degrees to positions similar to the Package Dispatch Supervisor Position.

76. Upon information and belief, Davis's reason for not promoting Plaintiff because she does not have a degree, and Terrell's alleged reason that Plaintiff lacked enough

dispatch experience, were mere pretext for the real reasons for refusing to promote Plaintiff, which was because of her sex and because she is transgender.

77. After Plaintiff disclosed her transition to female to Defendant, Davis refused to speak directly to Plaintiff at least from the time he became informed of Plaintiff's transition in or about June 2020 through on or about August 27, 2021, and possibly longer.

78. During this time Davis refused to use Plaintiff's name at all and referred to Plaintiff only as "dispatch."

79. During this time, Davis would have others outside of Plaintiff's chain of command communicate with her in his stead.

80. During this time frame, when Davis was in the same meetings as Plaintiff, whether in person or on a call, Davis refused to speak directly to Plaintiff.

81. Davis would ask someone else to ask Plaintiff his questions for Plaintiff.

82. Upon hearing Plaintiff's answers, Davis would ask either the same person or another to repeat Plaintiff's answer back to him, even though he was present in the same room or on the same call and could plainly hear Plaintiff's answers to his questions.

83. Additionally, Davis would direct someone else to answer Plaintiff's questions to him or simply refuse to acknowledge Plaintiff's questions when asked directly to Davis during these meetings.

84. Specifically, on or about November 3, 2020, during a preload meeting in which both Davis and Plaintiff were present, Davis directed an employee named Nate Owens to "tell dispatch" what Davis wanted to communicate to Plaintiff even though Plaintiff was in the same room with Davis. When Plaintiff answered, Davis then directed Nate Owens to

tell him what "dispatch" just said, even though Davis could plainly hear Plaintiff's answers.

85. Davis's conduct as referenced in the preceding paragraphs continued at least until August 27, 2021, and possibly longer.

86. Davis's conduct towards Plaintiff during meetings, which was done openly and in front of multiple other employees, caused Plaintiff to feel humiliated, degraded, and embarrassed publicly, and was intentionally designed to humiliate, degrade, and embarrass Plaintiff.

87. On or about October 27, 2020, Plaintiff complained to Terrell about Plaintiff's coworkers continuing to use Plaintiff's old name and incorrectly use male pronouns when referring to her.

88. Terrell responded to Plaintiff, "You can't expect everyone to remember to use female pronouns and new name after **just six months.**"

89. Terrell further told Plaintiff, "You have earrings and long hair now, but you're still just Colton."

90. Plaintiff's managers, supervisors, and coworkers continued to refer to Plaintiff as "Colton" and to use male pronouns when referring to Plaintiff until at least August 27, 2021, and possibly longer.

91. From the time Plaintiff came out until at least August 27, 2021, and possibly longer, Defendant's employee Andy Thompson would only refer to Plaintiff as "Colton."

92. From the time Plaintiff came out until at least August 27, 2021, and possibly longer, Defendant's employee Andy Hank would refer to Plaintiff as "brother" at least two times per week.

93. Defendant's employees' defiant resistance to using Plaintiff's new name and correct pronouns caused Plaintiff great distress and embarrassment, and further humiliated Plaintiff.

94. When Plaintiff came out to Human Resources on or about May 19, 2020, she aske for assistance in communicating her transition to female to her work group and coworkers.

95. Defendant informed only 4-5 persons in the immediate management circle at the facility and did not communicate the information any further.

96. As a result of Defendant's failure to communicate information about and expectations of behavior to employees, Plaintiff has been faced with regular confrontations related to her gender identity from other employees and been required to "come out" to someone new on nearly a daily basis.

97. On or about December 5, 2020, an unknown male employee of Defendant chased Plaintiff into the women's restroom claiming Plaintiff was in the wrong place.

98. In or about November and December 2020, Plaintiff worked as a driver during the peak holiday season and was supposed to receive a pay increase of one dollar and seventy four cents ($1.74) per hour.

99. Plaintiff never received the promised holiday peak season pay increase.

100. Upon information and belief, Defendant refused to pay Plaintiff the promised holiday peak season pay because of her sex, because she is transgender, and in retaliation for Plaintiff making a formal complaint of discrimination in or about the end of October 2020.

101. Since the conclusion of the investigation into Plaintiff's original complaint, Defendant has denied Plaintiff at least two additional promotions for which she applied,

including hiring persons with less experience than Plaintiff, and who, like Plaintiff, did not have a college degree.

102. The persons Defendant chose to hire over Plaintiff were not transgender.

103. Specifically, on or about February 26, 2022, Plaintiff applied for a position at the Lawrence, Kansas hub.

104. Plaintiff was denied this job allegedly because she would have been working as an equal on a work group with her brother.

105. Defendant told Plaintiff that Defendant's policy was to not allow family members to work together.

106. Upon information and belief, the alleged policy was mere pretext for not hiring/promoting Plaintiff because of her sex and because she is transgender.

107. Upon information and belief, Defendant had previously promoted an individual named Todd Morgan to a position in which Morgan became his own father's direct supervisor.

108. Morgan's aforementioned promotion was near in time to when Plaintiff was denied the Lawrence, Kansas position allegedly because of the aforementioned policy.

109. In or about August 2022, Plaintiff applied for another opening as Package Dispatch Supervisor, the same position Plaintiff had previously applied for and been denied.

110. Plaintiff was told she would have to "requalify" for the position, was not currently eligible for promotion, would not even be considered for the position, and was not granted an interview.

111. Upon information and belief, Plaintiff was otherwise more qualified than the other candidates who applied for the Package Dispatch Supervisor position.

112. Defendant's alleged reasons given to Plaintiff were mere pretext for continuing to not promote Plaintiff because of her sex and in retaliation for making a an internal complaint of illegal discrimination in October 2020 and for filing a Charge of Discrimination with the EEOC on or about August 31, 2021.

113. In addition to the foregoing, Defendant has reduced Plaintiff's work hours over the 12-month period from on or about August 31, 2021, through on or about August 27, 2022.

114. After filing her EEOC charge of discrimination on or about August 31, 2021, Defendant reduced Plaintiff's hours during the following twelve months by a total of 312 hours from the previous twelve-month period preceding the filing of said charge of discrimination.

115. After filing her EEOC charge of discrimination on or about August 31, 2021, Defendant has restricted Plaintiff to a maximum of 5.5 hours of work per day.

116. Plaintiff is the only employee at her facility and in her level of employment who is restricted to a maximum of 5.5 hours per day.

117. Defendant continued to bring in persons from outside the Lenexa facility who were not transgender and who were less qualified than Plaintiff to fill positions for which Plaintiff applied rather than hire and/or promote Plaintiff.

118. Defendant's employees continue to use incorrect male pronouns when referring to Plaintiff with complete disregard for Plaintiff's sex as of the filing of this Complaint for Damages.

119. Defendant denied Plaintiff multiple promotions, denied promised pay, and denied Plaintiff certain other benefits that would have come with a promotion, because of her sex and because she is transgender.

120. Defendant retaliated against Plaintiff after she filed a formal complaint of sex discrimination and a Charge of Discrimination with the EEOC by continuing to persist in mistreating Plaintiff, by refusing to correct the behavior of its employees towards Plaintiff, by denying Plaintiff multiple promotion opportunities, and by reducing and/or restricting Plaintiff's work hours.

121. Upon information and belief, Defendant is playing a long game with Plaintiff, refusing repeatedly to consider her for promotions, reducing her hours, and refusing to correct its employees' discriminatory conduct towards Plaintiff in attempt to get Plaintiff to quit her job with Defendant.

122. As described in the foregoing paragraphs, Defendant has treated Plaintiff differently than non-transgender employees because of Plaintiff's sex and because she is transgender.

123. As described in the foregoing paragraphs, Defendant has and continues to retaliate against Plaintiff for making complaints of illegal discrimination.

## COUNT I – TITLE VII, SEX DISCRIMINATION

124. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

125. Plaintiff is a transgender woman and member of the protected class of sex.

126. Plaintiff was subjected to discrimination because of her sex at the hands of Defendant and/or Defendant's employees, agents, and subordinates, in that she was

singled out for disparate treatment, and treated less favorably than non-transgender employees by Defendant both in day-to-day interactions with her coworkers and superiors, and when she was passed over for promotion to Package Dispatch Supervisor.

127. Plaintiff specifically applied for the Package Dispatch Supervisor position and was interviewed by Defendant on or about September 1, 2020, for this position.

128. Plaintiff had already been working in this position for several months and was qualified for the job.

129. Plaintiff suffered an adverse employment action due to her sex in that Defendant failed to promote Plaintiff who was otherwise qualified for the employment position, and which Defendant subsequently denied Plaintiff in circumstances giving rise to an inference of liability.

130. Plaintiff's sex was a motivating factor for Defendant's discrimination against Plaintiff.

131. By taking no action to stop its employees from discriminating against Plaintiff, Defendant ratified, authorized, and/or condoned its employees' conduct.

132. Defendant, through its agents, knew of the discrimination and failed to take appropriate action.

133. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

134. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

135. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

136. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost/denied benefits and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT II – TITLE VII, RETALIATION

137. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

138. Plaintiff engaged in protected activity within the scope of Title VII when she made complaints to her direct supervisor Terrell about the ongoing discrimination, when she made a formal complaint to Human Resources requesting an investigation into the ongoing discrimination, and when she filed a Charge of Discrimination with the EEOC.

139. Plaintiff was subjected to retaliation when Defendant refused to correct or otherwise put a stop to the discriminatory treatment of Plaintiff at the hands of Defendant's employees, agents, and subordinates, when Defendant denied Plaintiff promotions to other positions for which she specifically applied and for which she was qualified but passed over under circumstances that give rise to an inference of liability for retaliation and/or further discrimination, and when Defendant reduced Plaintiffs work hours by 312 hours over a twelve month period and restricted her from working more than 5.5 hours per day when no one else in her position was so restricted.

140. Plaintiff's complaints were a motivating factor for Defendant's retaliation against Plaintiff.

141. By taking no action to stop its employees from retaliating against Plaintiff, Defendant ratified, authorized, and/or condoned its employees' conduct.

142. Defendant, through its agents, knew of the retaliation and failed to take appropriate action.

143. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

144. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain and suffering, and related compensatory damages.

145. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the retaliation against Plaintiff.

146. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost/denied benefits and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

LAW OFFICE OF MADELINE JOHNSON

/s/ *Madeline Johnson*
Mary Madeline Johnson, D. Kan. # 77985
220 Main Street, Suite 201
Platte City, Missouri 64079
Telephone: (816) 607-1836
Facsimile: (816) 817-5507
Email: mmjohnsonlaw@gmail.com

ATTORNEY FOR PLAINTIFF